G. D. SEARLE & CO., Plaintiff-Appellant,

v.

John T. JARECKI, former Collector of Internal Revenue, and Ernest J. Sauber, former Collector of Internal Revenue and former District Director of Internal Revenue, Defendants-Appellees.

No. 12747.

United States Court of Appeals
Seventh Circuit.

Jan. 27, 1960.

Walter J. Cummings, Jr., Chicago, Ill., Edwin C. Austin, Middleton Miller, William M. McGovern, Jr., Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for appellant.

Charles K. Rice, Asst. Atty. Gen., Tax Division, Harry Marselli, Lee A. Jackson, I. Henry Kutz, Carter Bledsoe, Attorneys, Department of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago Ill., for appellee.

Before MAJOR, SCHNACKENBERG and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

G. D. Searle & Co., plaintiff-appellant, referred to as taxpayer, instituted this action to recover excess profits taxes in the total amount of $3,638,238.82, plus interest, which amount it alleges was erroneously and illegally assessed and collected by the Government for the calendar years 1950, 1951, and 1952. The District Court dismissed the suit on motion for summary judgment filed by the Government. The taxpayer appealed contending the granting of summary judgment was error in that it was based on an erroneous interpretation of the pertinent Internal Revenue Code provision and that a genuine issue of material fact existed.

The pleadings, a stipulation of facts, and answers to interrogatories and requests for admissions disclose that the

taxpayer is engaged in the manufacture and marketing of ethical drugs. Prior to 1950, and over a period of more than twelve months, the taxpayer incurred expenditures which resulted in the preparation and manufacture of two pharmaceuticals with the trade names of Banthine and Dramamine. During the years here involved the taxpayer derived income from sales of these drugs. Both were developed from and arose out of research activities conducted by the taxpayer before 1950. These chemical drug compounds were not in existence prior to their being prepared through experiments with various chemical formulas. The taxpayer applied for and received patents on both products.

The taxpayer claimed that the income from the sales of Banthine and Dramamine constituted abnormal income within the meaning of Sec. 456(a) (2) of the Internal Revenue Code of 1939 (26 U.S. C. Excess Profits Taxes, § 456).[1]   Sec-

tion 456 is designed to afford relief from the impact of excess profits taxes in certain situations which give rise to abnormally high income during the taxable year.

The taxpayer asserted that the income from the drugs Banthine and Dramamine qualified as income resulting from "discovery" within the class of income described in Sec. 456(a) (2) (B) as:

> "Income resulting from exploration, discovery, or prospecting, or any combination of the foregoing, extending over a period of more than 12 months;"

And, alternatively, the taxpayer asserted that such income is subject to classification as abnormal income pursuant to the Treasury Regulations [2] promulgated under the provision of Sec. 456 that:

> "The classification of income of any class not described in subpara-

---

1. Insofar as pertinent Sec. 456 provides:

"§ 456.   Abnormalities in income in taxable period—

"(a) Definitions.

"For the purposes of this section—

"(1) Abnormal income.

"The term 'abnormal income' means income of any class described in paragraph (2) includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 115 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence.

"(2) Separate classes of income.

"Each of the following subparagraphs shall be held to describe a separate class of income:

"(A) Income arising out of a claim, award, judgment, or decree, or interest on any of the foregoing; or

"(B) Income resulting from exploration, discovery, or prospecting, or any combination of the foregoing, extending over a period of more than 12 months; or

"(C) Income from the sale of patents, formulae, or processes, or any combination of the foregoing, developed over a period of more than 12 months; or

"(D) Income includible in gross income for the taxable year rather than for a different taxable year by reason of a change in the taxpayer's method of accounting. All the income which is classifiable in more than one of such subparagraphs shall be classified under the one which the taxpayer irrevocably elects. The classification of income of any class not described in subparagraphs (A) to (D), inclusive, shall be subject to regulations prescribed by the Secretary."

2. Treasury Regulations 130, Sec. 40.456–2 (b), as amended by T.D. 6026 (1953–2) Cum.Bull. 235:

"(b) Other income, not within a class described in subparagraphs (A)–(D) of section 456(a) (2), to which section 456 is applicable, may be grouped by the taxpayer, subject to approval by the Commissioner on the examination of the taxpayer's return, in such classes similar to those specified in subparagraphs (A)–(D) of section 456(a) (2) as are reasonable in a business of the type which the taxpayer conducts, and as are appropriate in light of the taxpayer's business experience and accounting practice. Income from the sale of tangible property arising out of research and development which extended over a period of more

graphs (A) to (D), inclusive, shall be subject to regulations prescribed by the Secretary".

The District Court held that the meaning of the word "discovery" as used in the statute, did not encompass the preparation of Banthine and Dramamine because they are products arising out of research and development, and that the Treasury Regulation, to which reference has been made, is not applicable.

The common accepted meaning of the word "discovery" includes "Finding out or ascertaining something previously unknown or unrecognized; as Curie's *discovery* of radium" (Webster's New International Dictionary (Unabridged 2d ed.) p. 745). We do not deem the maximum *noscitur a sociis* applicable. The wording of subparagraph (B) of the statute indicates that each word should be given significance independently of the others. It refers to "exploration, discovery, or prospecting, or any combination of the foregoing". The context in which the word appears suggests no reason to limit or qualify its commonly accepted meaning. That the statute herein involved omitted a provision of a similar World War II Excess Profits Tax Act which in defining abnormal income included that resulting from "research, or development of tangible property" does not in our opinion serve to narrow the scope of the word "discovery" as employed in the Internal Revenue Code provision here under consideration. The elimination of "research" and "development" as factors qualifying income for abnormal income classification served the Congressional objective of plugging "a potential loophole of major dimensions".[3] And, absent the element of discovery, income resulting from research or development does not by reason of the latter factors qualify for treatment as abnormal income. But the plugging of the loophole which existed under a former Act because of the use of the unqualified terms "research" and "development" does not require that the word "discovery" which the Congress saw fit to re-employ in the later enactment be regarded as having taken on the limited and qualified meaning the Government would ascribe to it. Neither the context of Sec. 456 nor the legislative history demonstrates that the term "discovery" was intended to describe only the discovery of that which is already in existence *i. e.* natural resources. If Congress had intended to limit the meaning of "discovery" it would have been a simple matter for it to have expressly done so.

It is our opinion that income resulting from discovery is not under the terms of subparagraph (B) of the statute precluded from classification as abnormal income merely because research or development may have occasioned, or have been factors which contributed to, the discovery. It is unnecessary to consider the argument advanced by the taxpayer concerning the application of the Treasury Regulation.

We conclude that the District Court erred in its interpretation of the statute and in granting summary judgment for the Government. A genuine issue of material fact existed as to whether Banthine and Dramamine were actually discoveries. Nothing we have said should be regarded as indicating any expression of opinion on the factual issue.

The judgment of the District Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

than 12 months is not included in the list of abnormal types of income to which section 456 is applicable, and such income may not constitute a class of income for purposes of that section. However, section 456 is applicable to such income if the income is otherwise properly includi-ble within a class of income to which such section is applicable, for example, the class described in section 456 (a) (2) (D)."

3. H.Rep. No. 3142, 81st Cong., 2d Sess., p. 13 (1951–1 Cum.Bull. 187, 189).